ROSEN, Chief District Judge,
concurring.
I concur with the majority’s decision to reverse the district court’s grant of summary judgment in favor of the plaintiff United States of America on Counts One and Two of the complaint, and to instead award summary judgment in the defendants’ favor on these claims. As the majority observes, the Government’s claim in Count One rests upon the proposition that defendant Renal Care Group Supply Company (“RCGSC”) did not qualify as a separate “entity” from its parent corporation, defendant Renal Care Group, Inc. (“RCG”), and the numerous subsidiaries of RCG that operated renal dialysis facilities, so that RCGSC therefore was ineligible for so-called “Method II” reimbursement under the pertinent Medicare statutory provisions and regulations. I write separately to emphasize that the governing statutory and regulatory scheme offers virtually no signposts for resolving this key question of RCGSC’s eligibility for Method II payments, and to explain why, in my view, this uncertainty alone leads fairly directly to the conclusion that the evidence marshaled by the Government fails as a matter of law to establish the “knowledge” element of its Count One claim under the False Claims Act (“FCA”), 31 U.S.C. §§ 3729-33.
As is evident from the majority opinion, it is no simple task in this case to determine whether the claims submitted by RCGSC for Method II reimbursement truly qualified as “false” within the meaning of the FCA. In asserting that these claims were indeed false, the Government relies principally upon statutory language that authorizes Method II payments to a “supplier of home dialysis supplies and equipment” only if this supplier “is not a provider of services [or] a renal dialysis facility.” 42 U.S.C. § 1395rr(b)(l)(C). As explained by the majority, the Government maintains that RCGSC failed this test for Method II reimbursement because it was a mere alter ego of its parent company, RCG, which in turn had a number of other subsidiaries that operated renal dialysis facilities. The defendants, in contrast, argue that RCGSC *534 was a separate legal entity from the RCG subsidiaries that provided renal dialysis services, and that this supply company therefore was eligible for Method II payments by virtue of its separate corporate existence.
The crux of the parties’ dispute, then, is the degree of “separateness” demanded under the pertinent Medicare statutory provisions and regulations in order for a supplier to be deemed “not a provider of services [or] a renal dialysis facility.” As the defendants observe, there is no basis in the Medicare statute or its implementing regulations for concluding that a Method II supplier must be wholly independent from any service provider or renal dialysis facility, without any corporate affiliation whatsoever. On the other hand, there surely must come a point at which a supplier could be deemed “separate” from a service provider or dialysis facility in only the most formalistic or technical sense, with one of these two entities being a mere shell of the other.
Accordingly, to determine whether RCGSC’s claims for Method II reimbursement were false, we must first ascertain where Medicare draws this line, and then decide whether the defendants crossed it. Yet, upon reviewing the various Medicare provisions and regulations cited by the parties, I see no clear answers to these questions, nor even a fixed, determinate set of criteria that a supplier must meet in order to be considered a separate “entity” from an affiliated service provider or renal dialysis facility. The majority evidently shares my reluctance to declare that RCGSC’s Method II claims either were or were not false, as it concludes only that “the structure of RCG and RCGSC is not obviously inconsistent with Congress’s goals” in creating the Method I/Method II reimbursement scheme. (Majority Op. at 529.)
Against this backdrop, I agree with the majority that the Government cannot show that RCGSC’s claims for Method II reimbursement reflected a reckless disregard of the relevant Medicare statutes and regulations. As the majority observes, it certainly made business sense for RCG and its subsidiaries to attempt to secure a greater share of the more lucrative Method II payments, provided that this profit-maximizing goal could be lawfully achieved. As it commenced this effort, RCG took a number of steps to ensure that its newly formed subsidiary, RCGSC, was eligible for Method II reimbursement as a supplier of home dialysis supplies and equipment, including (i) engaging a law firm to analyze this issue, and (ii) reaching out to federal agency officials to obtain their views on the lawfulness of the parent/subsidiary relationship between RCG and RCGSC. RCG then largely followed the advice it received through these communications with counsel and with federal officials, creating RCGSC as a separate entity with its own Medicare provider number. In addition, RCG took steps to ensure the separate corporate existence of RCGSC and the RCG subsidiaries that operated renal dialysis facilities; although parent RCG provided payroll, legal, human resources, and accounting support for RCGSC’s operations, furnished office space to this subsidiary, and allowed RCGSC to obtain supplies through RCG’s contracts with various manufacturers, the defendants state without contradiction that there was no similar sharing of office space, employees, or resources among RCGSC and any of the RCG subsidiaries that provided renal dialysis services. Finally, the defendants divulged this chosen corporate organizational scheme to the Government on a number of occasions over the years, including in Medicare re-enrollment applications and in audits and inspec *535 tions, without ever being advised that, this arrangement was problematic.
To be sure, there were a few “storm warnings” along the way that raised questions about the legality of RCGSC’s claims for Method II reimbursement. Yet, in each such instance,.RCG made further.inquiries to satisfy itself that its supplier subsidiary was acting in accordance with the relevant Medicare statutes and regulations. For instance, when the chief operating officer of RCG’s South Central Region, David Jones, expressed concern in an October 1998 e-mail that RCG’s proposed plan to obtain Method II payments might be an illegal scheme “simply to increase profits of our Company,” the company did not ignore this warning or sweep it under the rug. Instead, Jones’s message was forwarded to a number of senior company officials, who in turn continued their exploration, through outside counsel and contacts with federal officials, into the lawfulness of Method II reimbursement through a supplier subsidiary. Similarly, when RCG later learned that a competitor, Gambro Healthcare, was under federal investigation, resulting in a Gambro subsidiary pleading guilty to health care fraud related to its Method II billing, company officials reviewed RCGSC’s operations to ensure that RCG’s supplier subsidiary was not operating in a similar fashion.[1]
In short, when RCG sought to increase its profits through greater utilization of Method II reimbxxrsement, it elected to accomplish this objective by forming a wholly-owned subsidiary, RCGSC. In order for this supplier to lawfully collect Method II payments, RCG had to ensure that this newly-formed subsidiary was sufficiently separate and distinct from other RCG subsidiaries that provided dialysis services, such that RCGSC would not also be deemed “a provider of services [or] a renal dialysis facility.” 42 U.S.C. § 1395rr(b)(l)(C). Although the district court construed the pertinent Medicare statutes and regulations as clearly prohibiting the parent/subsidiary arrangement adopted by RCG, my colleagues and I agree that the statutory scheme provides little or no guidance as to whether and how suppliers and service providers may co-exist within the same corporate family tree. Faced with this unclear and ambiguous statutory scheme, RCG sought the advice of counsel and federal officials as to whether its plan for Method II reimbursement was lawful, and it made no secret of the corporate arrangement it had chosen to pursue Method II payments. Under this record, I cannot see how the defendants could be found to have acted in reckless disregard of the Medicare statutes and regulations governing Method II reimbursement. Because the majority reaches this same conclusion, I join in its decision.